NO. 7430 STATE OF LOUISIANA

CONSERVATIVE HOMESTEAD ASSN.

 VS COURT OF APPEAL

THOMAS A. POLLACK JR, ET AL. PARISH OF ORLEANS.

# 7430

7430

OPINION.

By his Honor John St. Paul;

This is a proceeding in concurso arising out of a building contract, but the only issue before us is a controversy between the surety on the contractor's bond and two furnishers of material, the precise point involved being whether certain credits received by the latter have been properly imputed.

1.

At the very outset it is urged that the statute (Act 262 of 1916) provides that the surety on a contractor's bond shall be limited to such defenses only as the contractor himself might make; and since the contractor does not, and (it is said) cannot, complain of the imputations of payment herein made, it follows that the surety cannot do so.

But it is manifest that the statute cannot be given a strictly literal interpretation without leading to consequences clearly not intended by the legislator; thus if the surety be a minor, or an interdicted person, it is not to be doubted that the tutor or curator of such person could set up the minority or interdiction as a defense, although such minority or interdiction could not possibly avail the contractor as a defense.

Nor can we doubt that where the person seeking to hold the surity has done some act prejudicial to the rights of the surety, the latter may set it up as a defense even though it would not have availed the contractor, who might have been a party to such act or might not have been injured by it. Conn vs Guaranty Co, 13 Ct of App 99 (102); Panama Sash Co vs Guaranty Co, 12 Court of App. 15; Meyer vs Bichow, 133 La. 975 (982).

We are therefore of opinion that the clause in the Statute, providing that the surety #### shall be confined to such defenses as the contractor himself might make, must be taken with this limitation, that the party invoking the clause must himself have done nothing to prejudice the rights of the surety, since it is a well settled

188

maxim of law that no man may profit by his own wrong.

11.

It is also urged that a surtty cannot complain of an imputation of payment of which the principal debtor does not complain; that an allottment of payment satisfactory to the principal debtor must be accepted and acquiesed in by the surtty.

But the law is, that the rights of third persons, espevially of surtties, though not controlling, must yet be considered in applying payments; and"where the payment, with the knowledge of the creditor, is ############ derived from such third person, or from a fund connected with the sevured debt, it must be applied thereto"; 30 Cyc 1251-1252; See also Panama Sash Co vs Guranty Co, 12 Ct of App p. 15 (and authorities cited P. 20); Also Burbank vs Buhler 108 La 39; Roca vs Caruso, 7 Ct of App 451; Jordy vs Judlin, 9 Ct of App 43.

The preliminaries settled we now proceed to considar the precise matter before us.

111.

The claim of W. H. Ward, doing business as the Algiers saw & Planing Mill, for $1944.56 is not disputed as to amount; but the surtty claims that the five payments amounting in all to $1725 should have been imputed to items sold to the contractor for the Conservative Homestead (or Kraft) Job, and should not have been imputed to other though older accounts.

As to this, the first of these payments ($300) was derived only for a third part from a payment by the Homestead to Pollock (the contractor), and the last payment (also $300) cannot be traced to any payment by the Homestead. The three other payments (in all $1125) appear to have come out of payments made by the Homestead .

189

But in each instance the payments received by Pollock from the Homestead were deposited in his own bank account and he paid Ward with his own personal check upon his own bank; and both Ward and Pollock swear that Ward was not told and did not know whence the funds were derived, and was not directed to impute them in any particular way. And it also appears that Pollock had a number of other jobs on hand, so that there was no reason for Ward to know that Pollock was receiving funds from any one source more than another.

Under the circumstances we think Ward was entitled to impute the payments to the older accounts as he did; the authorities above quoted by us holding that the obligation to impute payment to some particular account arises only when the creditor knows the source from which the funds were derived.

IV.

The claim of F. C. Duvic for $1049.42 is also not disputed as to amount. But here also the surfty claims that three payments of $540.74, $412, and $280, (in all $1132.74) should have been imputed to the Kraft or Homestead job as the older account, and not to certain other accounts as was done.

The facts are that these three payments were not derived from the Homestead, but the first came from the Suburban Drug Store, or Weilbacher job, the second from the Joseph Tripolino job, and the third from the Peter Taluto job.

At the time the last of these payments was received (November 23rd) they would #### just have sufficed to wipe out the open account against Pollock as it stood on Duvic's books, including the items for the Homestead or Kraft job, the last of which was charged on November 18th.

But Duvic undertook to impute the payments to two certain items, as follows; to a note which he held against Pollock for $805.01, and to an item of $217.85 which Pollock owed to one Gus Peterson, who in turn owed Duvic the same amount, Duvic agreeing to accept Pollock as his debtor in place of Gus Peterson.

190

As this latter transaction took place on December 8, that is to say, more than fifteen days after Duvic received the last payment; and as the transaction shows on its face that it was nothing more than a bold attempt to unload on the surety in this case the debt which Gus Peterson owed Duvic, we shall devote no space to a consideration of why the position taken by Duvic as to this item cannot be countenanced.

As to the note of $805, which Duvic held against Pollock, it was not due until November 27th and was in bank for collection when all three payments were received by Duvic. There remained until it its maturity and apparently was taken out by Duvic only about the time when the Gus Peterson matter was arranged, on which day (December 8th) Duvic and Pollock made up a set of accounts and imputed the various payments in a manner satisfactory to themselves, but which was clearly meant to wipe out all Pollock's indebtedness to Duvic save and except the indebtedness for which this surety was bound.

But as this last named indebtedness was due and owing at the time the payments were received, and the note had not yet matured, it is clear that the payments must be imputed to the past due open account and not to the note unless the equities of the case should require otherwise.

But there is no equity which does so require. For the ledger account of Duvic shows that this note did not include any indebtedness on the Trapolino or on the Taluto jobs, and included only $117.20 on the Weilbacher or Suburban Drug Store Job.

So that the most that equity and the principles above discussed would require in this case, would be that $117.20 out of the Weilbacher payment be imputed to the note and the rest to the account current.

But even this should not be allowed.

The taking of the note novated that account, not beacuse a debt is novated by the mere taking of a note therefor, but because Duvic by striking a general balance and accepting a note in settlement

191

of that balance, has so far confused the various items of the account that they are no longer seperable; since Duvic could no longer claim any one item seperately from the rest, or Pollock tender payment of any one item without tendering the whole. C. C. 2052—2053. 2153 2054. 2154

And it is very generally agreed that a confusion of several distinct debts so as to render them no longer seperable operates a novation. Baudry-Lacantinerie, Proit Civil Vol 13 (obligations Vol 3) No. 1708 (1710)

Moreover, Duvic having discounted the note with the bank, thereby changing the creditor, that itself operated a novation under our jurisprudence. Woolfolk vs Degelos, 24 An 199; C. C. 2189 #3.

And again since the bank held the note when the payments were received by Duvic, it is a presumption that they were made on the open account, and not on the note which was not the property of Duvic. Act 64 of 1904 Sec 74, C. C. 2140.

We are therefore of opinion that the payments received by Duvic should have been applied on the open account and not to the unmatured note, and the judgment appealed from must be amended accordingly.

X

It is therefore ordered that the judgment appealed from be amended by striking therefrom the item of $1049.42 in favor of F. C. Duvic as a charge against the surety herein (United States Fidelity and Gauranty Co), and as thus amended the judgment is affirmed; the costs of this appeal to be borne one half by F. C. Duvic and one half by the United States Fidelity & gauranty Co.

New Orleans La, February 1919.

O N R E H E A R I N G.

Per Curiam.

For the reasons assigned in the matter of Mrs Julia Campagno, Praying for a Concursus, No. 7443, this day decided,

It is ordered that, as between the United States Fidelity and Guranty Co and W. H. Ward, both our former decree and the judgment of the lower court be reversed, and that the case be remanded to the court a qua to be tried and decided in accordance with the views expressed in the opinion and final decree handed down in said cause No. 7443.